163 N.W.2d 105 (1968)
183 Neb. 602
Florence COOK, Administratrix of the Estate of Harvey Cook, Deceased and Florence Cook, Individually, Appellants,
v.
CHRISTENSEN SAND AND GRAVEL COMPANY OF FREMONT, a Partnership et al., Appellees.
No. 36903.
Supreme Court of Nebraska.
December 6, 1968.
*107 Sidner, Gunderson, Svoboda & Schilke, Fremont, for appellants.
D. Nick Caporale, Schmidt, Ford, Snow, Green & Mooney, Omaha, for appellees.
Heard before WHITE, C. J., and CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN and NEWTON, JJ.
NEWTON, Justice.
This is a workmen's compensation action brought by Florence Cook individually and as administratrix of the estate of Harvey Cook, deceased, hereinafter referred to as plaintiff, against Christensen Sand and Gravel Company, a partnership, hereinafter referred to as defendant.
On April 12, 1965, Harvey Cook was employed by defendant as a truck driver. At about 10 a. m. he was directed to haul a load of sand from defendant's plant to the construction site of the Fel-Tex Plant at Fremont, Nebraska. Defendant's concern was not unionized and Harvey Cook was not a union man. It appears that upon arrival at the Fel-Tex Plant, which was a union job, Harvey Cook was interrogated in an unfriendly manner by certain individuals employed at the Fel-Tex construction site about his union status. He succeeded in unloading the material in his truck, but did not return to defendant's plant. Upon discovering this, Richard Weir, defendant's manager, drove to the Fel-Tex construction site, arriving at about 2 p. m., he found Harvey Cook sitting in his truck which was surrounded by heavy machinery in such a manner that it could not leave. He found Harvey Cook to be in an agitated and nervous condition. Harvey Cook stated: "They've got me locked in * * *." Mr. Weir succeeded in getting the truck extricated and it was returned to defendant's plant by Harvey Cook who there stated to another employee: "They wouldn't let me dump my load. * * * They broke the aerial off my truck." He was still in a highly nervous condition. At approximately 3 to 3:30 p. m., Harvey Cook arrived with a load of coarse gravel or rock on a farm near Dodge about 30 miles distant. At about this time, he ate a peanut butter sandwich which was the only food he had had since his morning meal. On arrival at the farm, he proceeded to unload the gravel which was not difficult since his truck is what is commonly referred to as a dump truck. While doing so, he experienced a severe abdominal pain. A doctor was called and he was taken to the Dodge County Community Hospital in Fremont. He died on the following day, April 13, 1965. The primary cause of death was a perforated duodenal ulcer accompanied by peritonitis and complicated by emphysema and an impaired heart.
There was conflicting evidence as to the foregoing events alleged to have occurred at the Fel-Tex construction site, but in our view, the foregoing substantially reflects what actually occurred.
The medical evidence in this case is definitely conflicting. On trial to a single judge of the compensation court, to the court en banc, and on review in the district court, it was found in each instance that plaintiff had failed to sustain her burden of proof. The primary question presented is whether the perforation of Harvey Cook's ulcer and his resultant death had a causal connection with his employment or simply resulted from a natural progression or erosion of the ulcer from which he had been suffering for some time.
The medical experts agreed, or at least there is no dispute, in regard to the following *108 circumstances: The perforated duodenal ulcer to which Harvey Cook was subjected was an ulcer of long standing and he had suffered from it for at least 3 years. Generally speaking, the cause of ulcers is not known, but people who suffer from them have an unusually high hydrochloric acid and pepsin content in their stomachs around the clock and over an extended period of time. These acids eat away the walls of the stomach or intestine and unless checked, they may eventually result in perforation, with a severe pain being experienced immediately upon perforation. Emotional stress can increase the level of the acid and pepsin in the stomach and the ingestion of food also results in an increase in the level of these secretions. An ulcer which is constantly bathed in pepsin and hydrochloric acid would ordinarily progress in size and depth. Emotional stress may be a factor in the development and progression of ulcers.
Plaintiff called Dr. Alexander T. Harvey, a specialist in internal medicine, and Dr. Harry A. Jakeman, a specialist in general surgery. These were the attending physicians at the time of Harvey Cook's illness. In answer to hypothetical questions, both doctors testified that a contributing cause of the perforation of Harvey Cook's ulcer was the emotional stress resulting from the events which had previously occurred at the Fel-Tex construction site. They felt that Harvey Cook's ensuing nervous condition and the mental stress to which he had been subjected were the immediate cause of the perforation. They conceded, however, that the ulcer was one of long standing; that of necessity he was one of the individuals who was subject to a high stomach level of pepsin and hydrochloric acid around the clock, over a very extended period of time; and that the ulcer might well have perforated at any time notwithstanding the stress to which Harvey Cook had been subjected. It was also conceded that because there is no way of knowing what occurred in Harvey Cook's abdominal tract on the day in question, there was no way of positively ascertaining the exact condition which resulted in the perforation at the time it occurred. Dr. Harvey was not questioned about the peanut butter sandwich which Harvey Cook had ingested a very short time before he became ill, but Dr. Jakeman testified that the ingestion of this sandwich could also have been a contributing factor.
Defendant called Dr. John Courtney, who specializes in general surgery, and Dr. Harold N. Neu, who specializes in internal medicine. Both of these doctors testified that in their opinions, there was no causal relationship between the events which occurred at the Fel-Tex construction site and the decedent's death. Dr. Courtney stated: "The ulcer is there. The stress and strain, * * * does not make it perforate. The thing that causes it to perforate is that it has eroded deeply enough into the tissues, and then whenusually after a meal, after the taking in of some food into the stomach, without any emotion or with emotion, it perforates. * * * Emotion doesn't bring on the perforation. It's the condition of the ulcer at the stage where it's ready to perforate. And usually, as I say now, some food is taken in, and then she leaks." He further testified that although the ulcer could have perforated as the result of emotional stress, in his opinion, it did not; that the ingestion of food stimulates stomach activity and in this case, this was the most likely cause of the perforation. He insisted that it is pure speculation to attribute the perforation to the emotional stress sustained by Harvey Cook. Dr. Neu stated that such emotional stress could not, in a period of 3 or 4 hours, cause sufficient adrenal activity to bring about a sufficient digestion of internal tissue to result in a perforation of the ulcer although neither emotional stress nor the ingestion of food would be good for an ulcer. He did not, however, consider the eating of a sandwich as a cause of the perforation, but apparently attributed this to a natural progression of the ulcerous condition.
*109 In resolving this case, the following rules set forth in the case of Schoenrock v. School Dist. of Nebraska City, 179 Neb. 621, 139 N.W.2d 547, should be borne in mind: "In an action under the Workmen's Compensation Act the burden is on the claimant to establish by a preponderance of the evidence an accident arising out of and in the course of his employment and the disability resulting therefrom.
"Objective symptoms of an injury are those which may be observed by others as distinguished from those which are apparent only to the injured person. An objective symptom may be any symptom which indicates a deleterious change in the bodily condition of the injured person.
"The requirement that objective symptoms of an injury be produced `at the time' of the accident is satisfied if the symptoms manifest themselves according to the natural course of such matters without any independent intervening cause being shown."
Section 48-151, R.R.S. 1943, provides: "The word accident as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. The claimant shall have a burden of proof to estabish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment. There shall be no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment." It further provides: "The terms shall not be construed to include disability or death due to natural causes but occurring while the employee is at work, nor to mean an injury, disability or death that is the result of a natural progression of any preexisting condition." It is no longer necessary, under the Nebraska statutes, to prove the occurrence of an event external to the body as a cause of injury. See Harmon v. City of Omaha, 183 Neb. 352, 160 N.W.2d 189.
As will be noted, the medical evidence is definitely conflicting in regard to whether or not the emotional stress to which Harvey Cook had been subjected can be considered as a cause of his ulcer perforating. Opinion evidence rarely, if ever, bears the degree of certainty of other types of evidence and frequently involves speculation to a greater or lesser degree. In the present instance, it is known that Harvey Cook suffered from a chronic ulcer; that to produce that ulcer, he must necessarily have been susceptible to an abnormally high amount of hydrochloric acid and pepsin in his stomach around the clock over a period of several years; that the natural progression of his ulcer had reached the point where it could perforate at any time; and that it did happen to perforate during the course of his employment. If, as the medical experts agree, he had this high pepsin and acid content in his stomach at all times and this was the factor that caused the final erosion and perforation of the ulcer as is also agreed, it does not seem logical that the addition of a somewhat increased quantity of pepsin and hydrochloric acid due to emotional stress could possibly result in any material change in the rapidity with which the ulcerous spot was being eroded and that the perforation of the ulcer must be attributed to a natural progression of his preexisting condition. In addition, on the basis of the medical evidence, it would appear that because of the ulcer perforating at the time that it did, it could just as reasonably have been attributed to the ingestion of the peanut butter sandwich as to the emotional stress heretofore mentioned. In our view, plaintiff has failed to sustain the burden of proof and the judgment of the district court should be affirmed.
Affirmed.